IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SANDRA T. THOMAS                                                                         PLAINTIFF

v.                                          NO. 4:05CV00070 JWC

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                                  DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff, Sandra T. Thomas, appeals from the denial of her claim for disability insurance benefits. The decision of the Administrative Law Judge (ALJ) has become the final decision of the Commissioner. For the reasons that follow, the Court affirms the Commissioner's decision that Plaintiff was not disabled during the applicable time period.

I.

Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Brown v. Barnhart, 390 F.3d 535, 538 (8th Cir. 2004). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). If it is possible to draw two inconsistent conclusions from the evidence and one of these conclusions represents the Commissioner's findings, the Commissioner's decision must be affirmed. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004).

Plaintiff was born on May 9, 1947, has a high school education, and worked in various positions for the same furniture manufacturing company for thirty years, including service as a keypunch operator, sales service coordinator, purchasing clerk, and customer service representative. (Tr. 56, 74-78, 157-59.) In her application documents and at the hearing before the ALJ on April 8, 2004, Plaintiff alleged disability, with an onset date of

September 8, 2000, due to heart problems, mitral valve regurgitation, and back, hip, leg and foot pain.  (Tr. 55, 160, 162.)  She said that she had been having problems since about 1993; that she retired in 1996 because her back, leg and hip problems bothered her in climbing the stairs to her upper level office; and that she went back to work part-time in 2000 and 2001 as a favor to her previous employer.  (Tr. 55, 158-59, 162, 171-72.)  She testified that she had suffered from severe pain for the last two or three years and that, since she stopped working in 2001, her pain had become more frequent and deeper.  She said she had severe pain every day, even when just sitting, and that activity made it worse.  She said she was able to obtain relief by changing positions, walking, or alternating sitting and standing, and that she sometimes used a heating pad, a hot bath or shower, or took medication.  She said she took care of her pain through medication and by "doing a lot of nothing."  She said she did not go to the doctor much because she did not feel there was anything he could do for her.  (Tr. 163-70.)

A claimant is disabled, within the meaning of the Social Security statutes and regulations, if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The regulations provide a five-step process to determine whether a claimant is disabled.  See 20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work.  Id.

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  The ALJ next determined, at step two, that Plaintiff

suffered from a combination of severe impairments, including a diagnosis of rheumatic heart disease, mitral regurgitation, osteoarthritis of the left foot, and disorder of the skin and subcutaneous tissue. The ALJ found that none of her impairments, singularly or in combination, equaled a step-three listed impairment as contained in the regulations. At step four, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform a wide range of medium work-related activities, with certain physical limitations, but that those limitations did not preclude her from performing her past relevant work. The ALJ then found that, considering Plaintiff's age, education and work experience, the medical-vocational guidelines supported a finding that she was not disabled during the relevant time period. (Tr. 22-23.)

Plaintiff argues that the record as a whole does not contain substantial evidence to support the ALJ's decision that she is capable of performing a full range of medium work. She also argues that the ALJ's stated reasoning for his credibility findings as to the quantum of pain and the limitations she suffers are not based on substantial evidence in the record as a whole. Because the ALJ must evaluate a claimant's credibility before determining his or her RFC, see Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005), the issue of credibility will be discussed first.

As an initial matter, the ALJ found that Plaintiff was insured for disability benefits only through March 31, 2002, which is not disputed. To receive disability insurance benefits, a claimant must establish that she was disabled before the expiration of her insured status. Pyland v. Apfel, 149 F.3d 873, 876-77 (8th Cir. 1998); see 42 U.S.C. §§ 416(i), 423(c). Evidence of a disability subsequent to the expiration of one's insured status can be relevant, however, in helping to elucidate a medical condition during the time for which benefits might be rewarded. Id.

## II.

The ALJ is in the best position to gauge credibility and is granted deference in that

regard. Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Nevertheless, before discounting a claimant's subjective complaints, the ALJ must acknowledge and consider the following factors: (1) the objective medical evidence; (2) the claimant's prior work record; (3) the claimant's daily activities; (4) the duration, frequency and intensity of pain; (5) the dosage, effectiveness and side effects of medication; (6) precipitating and aggravating factors; and (7) functional restrictions. Pelkey v. Barnhart, 433 F.3d 575, 578 (8th Cir. 2006) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). Subjective complaints of pain may be discounted if there are inconsistencies in the record as a whole, but the ALJ must give reasons for discrediting the claimant. Id. Here, the ALJ stated that he had considered the evidence in light of the Polaski factors and the relevant regulations and rulings, directly addressing each of the specified factors and finding that Plaintiff was not fully credible. (Tr. 20-22.)

First, the ALJ reviewed the medical evidence presented and noted that the objective medical findings were not consistent with the disabling level of pain alleged by Plaintiff and that tests and x-rays showed only minimal findings. (Tr. 21.) The ALJ's recitation and analysis of the medical evidence is supported by the record.

Although an echocardiogram on April 18, 2002, noted some moderate abnormalities, (Tr. 100), no restrictions were ever placed on Plaintiff due to her heart condition, and she acknowledged at the hearing that it was not a serious condition which had ever precluded her from working. (Tr. 172-73.)

On three occasions between May and November 2002, Plaintiff sought treatment from Dr. Gary Bowman for foot and heel pain. Dr. Bowman diagnosed plantar fasciitis[1] and "probable" tendinitis. On two of the visits, Plaintiff was given a steroid injection which provided "nearly instant" or immediate relief of her discomfort. She was also instructed on

---

[1] Plantar fasciitis is an inflammation of the long tendon stretching from the heel to the front of the foot. See www.medterms.com.

stretching exercises and was prescribed an anti-inflammatory. (Tr. 121-24.) X-rays sometime in 2002 and radiology tests on February 28, 2003, showed no fracture or dislocation, no calcification, minimal spurring, no significant arthritic change, and no acute abnormality. (Tr. 123, 135.)

In April 2003, Plaintiff went to an orthopaedic clinic complaining of left hip pain and lower back pain for the last ten to fifteen years, as well as intermittent pain in both legs. She told Dr. Benjamin Dodge that she had no pain on the day of evaluation and that it mainly occurred after exertion, such as walking or exercising. X-rays of the lumbar area showed syndesmophyte formation at L2-3 with slight narrowing of disc space, and some evidence of foraminal stenosis at L4-5 and L5-S1. He told her to continue anti-inflammatory medication and ordered an MRI. (Tr. 137-38.)

According to Dr. Bowman, the MRI showed no evidence of a ruptured disc, but Plaintiff had a bulging disc and mild arthritis, as well as possible piriformis syndrome,[2] causing leg pain. He encouraged her to continue seeing the orthopedist. (Tr. 140.) Plaintiff returned to Dr. Dodge on June 12, 2003, and he noted that the MRI had showed some degenerative joint disease and some early disc desiccation. He said Plaintiff had taken anti-inflammatory corticosteroids, was "much improved" and presented no complaints. He said there was no evidence of disc protrusion or canal stenosis, and he advised weight reduction and anti-inflammatory medication as needed. (Tr. 136.)

Following the administrative hearing, the ALJ referred Plaintiff for a consultative orthopedics examination on May 12, 2004, with Dr. William F. Blankenship. She complained of left hip pain and back pain, which she said had started bothering her in the last year. X-rays were taken of her hip, showing no bony pathology or calcification. After review of the x-rays and a physical examination of Plaintiff's lumbar spine and left hip, Dr.

---

[2]This is irritation of the sciatic nerve caused by compression of the nerve within the buttock by the piriformis muscle. Id.

5

Blankenship's only impression was "low back pain, by history" and "left hip pain, by history." He did not identify any findings as abnormal or disabling. (Tr. 146-47.) He completed an assessment of her ability to perform work-related activities, finding no limitations whatsoever in lifting, carrying, sitting/standing/walking, using her hands/feet/arms, or manipulative or postural activities. (Tr. 148.)

Contrary to Plaintiff's contention, the ALJ did not rely solely on the absence of objective medical findings to support his credibility determination, but expressly acknowledged that this was just one factor in his analysis. (Tr. 20.) The ALJ also noted that Plaintiff's ability to engage in routine daily activities was inconsistent with the alleged level of pain; that she alleged her pain was "mainly an exertional type thing" that intensified with activity; that her pain was able to be controlled with over-the-counter medication and occasional muscle relaxers; that her alleged functional restrictions were inconsistent with the objective evidence and clinical observations; and that no physician had placed any restrictions or limitations on her or concluded that work activity was contraindicated due to any impairment. He also discussed the testimony and statements of her relatives and friends, finding them to be unpersuasive, as they relied heavily on "uncritical acceptance of the claimant's subjective complaints." (Tr. 20-22.)

"Where adequately explained and supported, credibility findings are for the ALJ to make" and will not be disturbed on judicial review. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Here, the ALJ gave multiple, valid reasons for finding that Plaintiff and her witnesses were not credible. See Pelkey, 433 F.3d at 578-79 (ALJ's decision to discount subjective complaints of disabling back, neck and arm pain supported by claimant's daily activities, the absence of any medical opinion that he was unable to work, and physician recommendation of exercise and medication, rather than surgery); Goff v. Barnhart, 421 F.3d 785, 792-93 (8th Cir. 2005) (proper to discount allegations of disabling pain due to lack of corroborating medical evidence, claimant's activity level and work record, and her

6

failure to take prescription pain medication); Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) (significant daily activities and evidence of effective medication resulting in relief may diminish credibility of subjective complaints); Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (infrequent treatment is valid basis for discounting subjective complaints).

Plaintiff argues that the ALJ did not give sufficient weight to her good work record. The ALJ did acknowledge her "excellent" earnings record, and he noted that she had retired after thirty years with the same employer. (Tr. 18, 173.) While a good work record may serve to enhance credibility, it may also indicate that a long-standing medical condition did not prevent the claimant from working. See Goff, 421 F.3d at 792-93; Nunn v. Heckler, 732 F.2d 645, 648 (8th Cir. 1984). Plaintiff alleged that she had been having problems since 1993 or earlier, and she was nevertheless able to work through 1996 and to return to part-time work in 2000 and 2001.

The ALJ's credibility analysis comports with the requirements of Polaski, and substantial evidence supports his findings in this regard.

III.

Residual functional capacity is defined as "what [the claimant] can still do" in a work setting despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ bears the final responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. Eichelberger, 390 F.3d at 591; see 20 C.F.R. § 404.1527(e)(2), § 404.1545(a)(3).

Plaintiff suggests that, in assessing her RFC, the ALJ improperly relied upon consulting physician Dr. Blankenship's assessment of her ability to perform work-related activities because his examination was limited to her hip, where no pathology had been expected, rather than her back, where the testing had indicated abnormality. Although the ALJ stated that he was affording "substantial weight" to Dr. Blankenship's assessment (Tr.

22), he nevertheless imposed a more restrictive RFC. Dr. Blankenship found no functional limitations whatsoever and found that Plaintiff could *frequently* (meaning one-third to two-thirds of an eight-hour day) lift/carry up to *100* pounds, could frequently use her hands/feet/arms and engage in various postural activities, and had the capacity to sit, stand or walk *eight hours* at a time. (Tr. 148.) In contrast, the ALJ found that Plaintiff could lift and/or carry up to *fifty pounds occasionally*, and up to *twenty-five pounds frequently*; could stand, walk and/or sit *about six hours* in an eight-hour workday; and had unlimited ability to push/pull with no postural or manipulation limitations. The ALJ thus concluded that she retained the RFC to perform a wide range of medium work, which would not preclude her past work. (Tr. 21.) See 20 C.F.R. § 404.1567(c) (medium work requires claimant to occasionally lift 50 pounds, frequently lift/carry 25 pounds, do "a good deal" of walking or standing, and pushing/pulling of arm or leg controls).

In arriving at this RFC, the ALJ stated that he was placing "great weight" on the fact that Plaintiff's treating physician, Dr. Bowman, had not placed any restrictions or limitations on her. (Tr. 22.) Moreover, the record shows that her treating orthopedist, Dr. Dodge, placed no limitations either. The ALJ also stated that he had considered the opinions of the state agency medical consultants, who found more restrictive functioning than Plaintiff's treating physicians or Dr. Blankenship. Recognizing that the opinions of such non-examining consultants are entitled to lesser weight than those of examining or treating physicians, the ALJ said he gave them "some weight" in that they were consistent with the rest of the record. (Tr. 22.)

Plaintiff says that, if the ALJ required additional medical information, he should have first inquired of Plaintiff's treating physician and, if that was not obtainable, he should have requested an "appropriate" consultative examination of her lumbar area, where previous testing had shown abnormalities. While the ALJ has an independent duty to develop the record in a social security disability hearing, he is not required "to seek additional clarifying

8

statements from a treating physician unless a crucial issue is undeveloped." Goff, 421 F.3d at 791. Here, apparently all of Plaintiff's medical records from her primary care physician and orthopedist were submitted (from 2002 and 2003), including x-rays of her back and foot and an MRI of her lumber area (all from 2002 and 2003). The ALJ took the extra step of ordering x-rays of her hip (the only area not yet x-rayed) and a consultative examination, where both her hip and her back were evaluated. (Tr. 146-47, 177.) Nothing indicates that re-contacting her treating physicians or ordering additional x-rays of her lumbar area after the administrative hearing in 2004 would have assisted the ALJ in determining whether she was disabled at any time before March 31, 2002. The earlier diagnostic testing and medical records were far more relevant to Plaintiff's claim of disability during the period for which benefits might be rewarded.

Plaintiff also argues that her painful foot condition precludes her from meeting the standing requirements of medium level work. As stated earlier, her foot condition was satisfactorily treated, and x-rays showed no acute abnormality. Additionally, her complaints were limited to a six-month period following expiration of her insured status on March 31, 2002, and there is no evidence that this was a disabling condition during the relevant time period.

The record shows that, in making his RFC determination, the ALJ considered the relevant medical evidence and medical source opinions, properly discounted Plaintiff's subjective complaints, and appropriately incorporated functional restrictions imposed by Plaintiff's physical limitations as supported by the record as a whole. In light of this record, substantial evidence supports the Commissioner's decision that Plaintiff was able to perform her past relevant work and was, therefore, not disabled before the expiration of her insured status.

IV.

ACCORDINGLY, the final decision of the Commissioner is **affirmed** and Plaintiff's

case is **dismissed** with prejudice.

    IT IS SO ORDERED this 28th day of March, 2006.


                                                                   UNITED STATES MAGISTRATE JUDGE